UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
GLORIVY E.C.,

                        Plaintiff,          DECISION AND ORDER
                                            1:24-CV-01919-GRJ

            v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

    In May of 2021, Plaintiff Glorivy E.C.[1] applied for Disability Insurance

Benefits under the Social Security Act. The Commissioner of Social

Security denied the application.  Plaintiff, represented by New York County

Lawyers Association, Jessica Breuer, Esq., of counsel, commenced this

action seeking judicial review of the Commissioner's denial of benefits

under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the

jurisdiction of a United States Magistrate Judge. (Docket No. 18).

    This case was referred to the undersigned on December 16, 2024.

Presently pending is Plaintiff's Motion for Judgment on the Pleadings

pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

No. 25). For the following reasons, Plaintiff's motion is due to be denied, the Commissioner is granted judgment on the pleadings, and this case is dismissed.

## I. BACKGROUND

### A. Administrative Proceedings

Plaintiff applied for benefits on May 26, 2021, alleging disability beginning March 17, 2020. (T at 32).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on January 31, 2023, before ALJ Raymond Prybylski. (T at 142-71). Plaintiff appeared with an attorney and testified with the assistance of Spanish language interpreters. (T at 148-64). The ALJ also received testimony from Elaine Cogliano, a vocational expert. (T at 164-69).

### B. ALJ's Decision

On February 22, 2023, the ALJ issued a decision denying the application for benefits. (T at 26-48).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 17, 2020 (the alleged

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 19.

onset date) and meets the insured status requirements of the Social Security Act through December 31, 2025 (the date last insured). (T at 34).

The ALJ concluded that Plaintiff's morbid obesity, diabetes and peripheral neuropathy, iron deficiency anemia ("IDA"), osteoarthritis in the knees, depressive disorder, and panic disorder were severe impairments as defined under the Act. (T at 35).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 35).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: she cannot kneel or climb ladders, ropes, or scaffolds; she can only occasionally crouch, crawl, and feel with both hands; she is limited to simple tasks and can tolerate no more than occasional decision-making, no production rate work, and no more than occasional interaction with the public, co-workers, and supervisors. (T at 36).

The ALJ concluded that Plaintiff could not perform her past relevant work as a hairdresser. (T at 42).

However, considering Plaintiff's age (39 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 43).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between March 17, 2020 (the alleged onset date) and February 22, 2023 (the date of the ALJ's decision). (T at 43-44).

On February 21, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-9).

### C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on March 13, 2024. (Docket No. 1).  On September 27, 2024, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 25, 26).  The Commissioner interposed a brief in opposition to the motion and in support of a request for judgment on the pleadings on November 12, 2024. (Docket Nos. 21, 22).  On November 22, 2024, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 23).

## II.  APPLICABLE LAW

A.    *Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec*., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises four primary arguments in support of her request for reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed.  Second, she contends that the ALJ's RFC determination is not supported by substantial

evidence. Third, Plaintiff asserts that the ALJ erred in discounting her subjective complaints.  Fourth, she challenges the ALJ's step five analysis. The Court will address each argument in turn.

A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion,

with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, Dr. Edwin Cueva completed a functional assessment in November of 2022.  Dr. Cueva reported that he had been Plaintiff's treating psychiatrist since March of 2021, seeing her every month or every other month. (T at 2123).  He diagnosed major depression

(recurrent) and generalized anxiety disorder, complicated with panic syndrome. (T at 2123).

Dr. Cueva assessed mild limitation in Plaintiff's ability to remember locations and work-like procedures; mild impairment as to understanding and remembering short and simple instructions; moderate limitation with respect to identifying and solving problems; and marked impairment as to understanding and remembering detailed instructions, answering questions and providing explanations, and describing work activity to someone else. (T at 2125).

He opined that Plaintiff had marked limitation in her ability to maintain attention and concentration for extended periods, perform at a consistent pace without interruption, and complete a normal workday and workweek. (T at 2127). Dr. Cueva assessed mild impairment in Plaintiff's capacity to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance and be punctual, and make simple work-related decisions. (T at 2127).

Dr. Cueva believed Plaintiff had moderate to marked limitation with respect to social interaction, but no limitation in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (T at 2127). He assessed generally moderate impairment

in Plaintiff's ability to adapt or manage herself, but no impairment as to maintaining hygiene and appropriate attire. (T at 2129). Dr. Cueva predicted that Plaintiff would be absent from, or late for, work more than 4 times per month because of symptoms or treatment. (T at 2129).

The ALJ deemed Dr. Cueva's opinion not persuasive. (T at 42). For the following reasons the Court finds the ALJ's assessment supported by substantial evidence and consistent with applicable law.

First, the ALJ reasonably read the record, including Dr. Cueva's own treatment notes, and found them inconsistent with marked impairment in Plaintiff's ability to meet the mental demands of basic work activity.

Although Plaintiff certainly struggled with anxiety and depression, the mental status examination findings were generally unremarkable and consistently described Plaintiff as demonstrating intact attention and concentration, appropriate affect, and fair insight and judgment. (T at 40-41, 639-41, 1375, 1398, 1413, 1631, 1681, 1740, 1777, 1890, 1910, 1960, 2013, 2029, 2033, 2037, 2049, 2053, 2063, 2067-69, 2083, 2087, 2097).

Moreover, at the time of his functional assessment, Dr. Cueva assigned Plaintiff a Global Assessment of Functioning ("GAF")[3] score of 80.

---

[3] The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *Pollard v. Halter*, 377 F.3d 183, 186 (2d Cir. 2004).

(T at 2117). "A GAF in the range of 71 to 80 signifies that if symptoms are present, they are transient and expectable reactions to psychosocial stressors (i.e. [sic], difficulty concentrating after a family argument) or no more than a slight impairment in social, occupational, or school functioning…." *Murphy v. Astrue*, No. 08-CV-63643-CJS, 2009 WL 1097451, at *3, n. 3 (W.D.N.Y. Apr. 16, 2009).

Although ALJs must be careful not to overestimate the significance of a claimant's ability to be cooperative and appropriate during brief visits with supportive medical providers, such evidence can support a decision to discount marked or extreme limitations. *See, e.g., Knief v. Comm'r of Soc. Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED), 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").

The ALJ also reasonably found the highly restrictive aspects of Dr. Cueva's opinion inconsistent with the other medical opinion evidence.

Dr. Elizabeth Kronk performed a consultative psychiatric evaluation in July of 2021. She diagnosed major depressive disorder (recurrent, moderate), panic disorder, and unspecified anxiety disorder. (T at 641). Dr. Kronk opined that Plaintiff had no limitation in her ability to understand, remember, or apply simple or complex directions and instructions; no limitation in the ability to use reason and judgment to make work-related decisions; moderate impairment in her ability to interact with supervisors, co-workers, and the public; mild limitation in her ability to sustain concentration, perform a task at a consistent pace, and maintain personal hygiene and appropriate attire; moderate impairment in her ability to sustain an ordinary routine and regular attendance at work; and moderate to marked limitation in her ability to regulate emotions, control behavior, and maintain well-being. (T at 641).

In September of 2021, Dr. K. Liber-Diaz, a non-examining State Agency review consultant, assessed moderate impairment in Plaintiff's mental functioning, but opined that Plaintiff could perform the basic demands of competitive, remunerative, unskilled work on a sustained basis in a setting that involved only limited social interaction. (T at 178, 187). Dr.

M. Juriga, another State Agency review consultant, reached the same conclusion in February of 2022. (T at 201-02, 210-11).

Lastly, the ALJ did not reject the evidence of limitation in Plaintiff's mental functioning, as Plaintiff suggests.  Rather, the ALJ found Plaintiff restricted to work involving simple tasks, requiring no more than occasional decision-making and no production-rate work, and demanding no more than occasional interaction with the public, co-workers, and supervisors. (T at 36). *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014)(finding that ALJ appropriately accounted for moderate work-related psychiatric limitations by limiting the claimant to unskilled, low stress work involving limited contract with others); *see also Platt v. Comm'r of Soc. Sec.*, 588 F. Supp. 3d 412, 422 (S.D.N.Y. 2022)(collecting cases); *Knief v. Comm'r of Soc. Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED), 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status

examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").[4] These limitations adequately took into account Plaintiff's mental functioning.

B.    RFC

A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).  When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and decide based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

---

[4] Plaintiff also asserts that the ALJ did not adequately develop the record because he failed to ask Plaintiff questions about her mental functioning during the administrative hearing.  However, the record regarding Plaintiff's mental functioning is robust, including extensive treatment notes and multiple medical opinions.  Further, she was given the opportunity to speak about her mental functioning during the administrative hearing. Her symptoms were, in fact, discussed, and she was represented by counsel at the hearing, who could have elicited additional information at that time. (T at 155-56, 163-64, 164). Plaintiff also suggests that the ALJ should have obtained additional records from Montefiore Health System to cover the period following her May 2022 hysterectomy. The record, however, includes Montefiore records from June 2022 through December 2022. (T at 2137-2319).

Here, the ALJ found that Plaintiff retained the RFC to perform a reduced range of sedentary work. (T at 36).  Plaintiff challenges this finding, citing evidence of significant pain and limitation and a limited array of activities of daily living.  The Court concludes that the ALJ's assessment is supported by substantial evidence and is consistent with applicable law.

Notwithstanding documented complaints of knee and back pain, treatment notes include generally unremarkable findings, including full range of motion, normal gait, and full strength. (T at 39, 1030, 1150, 1183, 1609, 1631, 1644, 1777, 1910).

Dr. Saundra Nickens performed a consultative examination in July of 2021.  She diagnosed obesity, left knee pain with grinding, secondary anemia, palpitations and tachycardia, diabetes, and peripheral neuropathy. (T at 636).  Notably, Dr. Nickens opined that Plaintiff had no objective functional limitations. (T at 636).

Two non-examining State Agency review physicians, Dr. Dickerson and Dr. Padmaraju, reviewed the record and concluded that Plaintiff could meet the physical demands of light work. (T at 181-83, 204-06).

The ALJ gave some persuasive weight to these opinions, but also credited evidence of pain and limitation arising from Plaintiff's back and knee pain and anemia and found her somewhat more restricted in her

ability to perform work (*i.e.*, finding her capable of a reduced range of sedentary, as opposed to light, work). (T at 40). *See Baker o/b/o Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018)("Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand.")(emphasis in original)(collecting cases); *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999)(noting that "the ALJ's RFC finding need not track any one medical opinion").

"Substantial evidence is "a very deferential standard of review — even more so than the 'clearly erroneous' standard." *Brault v. SSA*, 683 F.3d 443, 447-48 (2d Cir. 2012) (per curiam) (citation omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." Id. at 448 (emphasis in original) (citation and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008)(citation and internal quotation marks omitted).

Indeed, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if

substantial evidence supporting the claimant's position also exists." *Id.*

(citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)); *see also*

*McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is

susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld.")(citation omitted).

Here, as discussed above, the ALJ's conclusion that Plaintiff could

perform a reduced range of sedentary work is supported by a reasonable

reading of the treatment record and appropriate consideration of the

medical opinion evidence.  It must therefore be sustained.[5]

C.    *Subjective Complaints*

A claimant's subjective complaints of pain and limitation are "an

important element in the adjudication of [social security] claims, and must

be thoroughly considered in calculating the [RFC] of a claimant." *Meadors*

*v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also*

20 C.F.R. § 416.929.

---

[5] Plaintiff also argues that the ALJ erred by failing to adequately address her obesity. However, Plaintiff points to no evidence of additional work-related limitations specifically related to obesity that the ALJ failed to consider or incorporate. *See Browne v. Comm'r of Soc. Sec.*, 131 F. Supp. 3d 89, 101 (S.D.N.Y. 2015); *Mota v. Comm'r of Soc. Sec.*, No. 20-CV-07294 (SN), 2022 WL 464098, at *12 (S.D.N.Y. Feb. 15, 2022).

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted).

Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id.* (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'") (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).

The ALJ follows a two-step process in evaluating a claimant's subjective complaints.

First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available

medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.  This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's subjective complaints, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision

is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

Here, Plaintiff states that she has been unable to work since December of 2022 due to severe pain, anxiety, and depression, and relies heavily on her son to assist with activities of daily living, including shopping and household chores. (T at 70, 152, 160-62).  She experiences panic attacks, racing heart rate, sweating, and an inability to leave her home. (T at 70, 160-62).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record. (T at 37).

The Court finds the ALJ's assessment of Plaintiff's subjective complaints supported by substantial evidence and consistent with applicable law.

As discussed above, the ALJ's conclusion that Plaintiff's mental and physical limitations did not preclude a reduced range of unskilled, sedentary work was consistent with a reasonable reading of the extensive treatment record, which documented consistent complaints, but also

generally unremarkable clinical findings.  In addition, the ALJ's assessment is supported by medical opinion evidence, including the findings of two consultative examiners and the State Agency review physicians.

An ALJ has the discretion to discount a claimant's subjective complaints where, as here, those complaints can reasonably be considered inconsistent with the overall clinical assessments and treatment notes. *See Kuchenmeister v. Berryhill*, No. 16 Civ. 7975, 2018 U.S. Dist. LEXIS 9750, at *59 (S.D.N.Y. Jan. 19, 2018); *Rodriguez v. Colvin*, No. 15 Civ. 6350, 2016 U.S. Dist. LEXIS 159003, at *68-69 (S.D.N.Y. Nov. 14, 2016); *Robles v. Colvin*, No. 16CV1557 (KMK) (LMS), 2019 U.S. Dist. LEXIS 62118, at *51 (S.D.N.Y. Apr. 9, 2019).

In addition, the ALJ noted that there was evidence showing that Plaintiff could engage in a broader range of activities of daily living than she stated, including maintaining significant weight loss following gastric bypass surgery and using public transportation. (T at 38-41, 149, 641, 1745, 2309).

There is no question that Plaintiff suffers from pain and limitation. The ALJ, however, did not dismiss Plaintiff's subjective complaints and, in fact, found her limited to a reduced range of sedentary work. (T at 36).

However, "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). "Otherwise, eligibility for disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for the decision to discount Plaintiff's subjective complaints, including a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living. This is sufficient under the deferential standard of review applicable here. *See Stanton v. Astrue,* 370 Fed App'x 231, 234 (2d Cir. 2010)(stating that courts will not "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling"); *Hilliard v. Colvin*, No. 13 Civ. 1942, 2013 U.S. Dist. LEXIS 156653, at *48 (S.D.N.Y. Oct. 31, 2013)(finding that ALJ "met his burden in finding [subjective] claims not entirely credible because [claimant] remains functional in terms of activities of daily living and the objective medical evidence fails to support her claims of total disability based on pain").

D.    *Step Five Analysis*

At step five of the sequential analysis, the Commissioner determines whether the claimant can perform work that exists in significant numbers in

the national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

In the present case, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 43).

In reaching this conclusion, the ALJ relied on the opinion of a vocational expert, who testified that a hypothetical claimant with the limitations set forth in the RFC determination could perform the representative occupations of table worker, assembler, and stuffer. (T at 43, 164-169).

Plaintiff contends that the ALJ's step five analysis is flawed.  In particular, she argues that the hypothetical questions presented to the vocational expert during the administrative hearing did not include all her physical and mental limitations.

This argument is a restatement of Plaintiff's other challenges to the ALJ's decision and is unavailing for the reasons outlined above.  *See Wavercak v. Astrue*, 420 F. App'x 91, 95 (2d Cir. 2011)("Because we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject Wavercak's vocational expert challenge.").

Plaintiff also argues that the ALJ erred by failing to ask the vocational expert to address her inability to speak English.

Courts in this Circuit, however, have recognized that "the inability to speak English is no longer relevant at step five." *Waledahmad A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-398-DB, 2024 WL 3722697, at *12 (W.D.N.Y. Aug. 8, 2024); *see also Pichardo v. Comm'r of Soc. Sec.*, No. 21-cv-06873 (SDA), 2023 WL 2596970, at *20 (S.D.N.Y. Mar. 22, 2023) ("[T]he ALJ was not required to assess Plaintiff's ability to speak, read or understand English, which is no longer relevant to the assessment of education as a vocational factor."); *Maria H. v. Comm'r of Soc. Sec.*, No. 3:23-CV-00235 (VAB), 2024 WL 4349011, at *13 (D. Conn. Sept. 30, 2024).

In 2020, the Social Security Administration revised its regulations concerning English proficiency because it concluded that "changes in the national economy indicate that employment rates for people with limited English proficiency have increased since 1980, which suggests that English proficiency is no longer a useful category describing a claimant's 'educational attainment or of the vocational impact of an individual's education for the purposes of our programs,' as it was in 1978, when the former regulation was written." *Pichardo*, 2023 WL 2596970, at *20

(quoting *Salimeh N. v. Comm'r of Soc. Sec.*, No. C21-1523 (SKV), 2022 WL 1963719, at *4 (W.D. Wash. June 6, 2022)).

For these reasons the Court finds no error in the ALJ's step five analysis.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 25) is DENIED; the Commissioner is GRANTED judgment on the pleadings; and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.

Dated: December 23, 2024

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge